FILED - GR
October 8, 2025 11:47 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW   SCANNED BY: / /

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL GOFF and
SCOTT PETER COULIER,

    Defendants.
_____/

1:25-cr-148

Jane M. Beckering
U.S. District Judge

**FELONY INFORMATION**

The United States Attorney charges:

**(Conspiracy to Commit Wire Fraud)**

Beginning at a time unknown but from at least in or about December 2020, and continuing to in or about June 2021, in Kent County, within the Southern Division of the Western District of Michigan and elsewhere, the Defendants,

**MICHAEL GOFF and
SCOTT PETER COULIER,**

knowingly and voluntarily conspired, confederated and agreed with each other and other known persons to commit the offense of wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1349.

**OBJECT, MEANS, AND METHODS**

1.     The object of the conspiracy was for the members, including the defendants, to enrich themselves by stealing customer loyalty rewards from a West Michigan retailer ("Corporate Victim 1") and fraudulently using the rewards to acquire merchandise at Corporate Victim 1's retail locations for their own personal use or for resale.

2.     Corporate Victim 1, located in the Western District of Michigan, operates a

customer loyalty program. The loyalty program allows customers to use a platform on the company's website to create a customer loyalty account. The loyalty program tracks the customer's spending in Corporate Victim 1's stores and rewards the customer upon reaching certain spending limits by transferring loyalty rewards, in various dollar amounts, into the customer's account. These rewards are the equivalent of cash and can be used by the customer to make purchases in Corporate Victim 1's stores.

3. At the relevant times, Corporate Victim 1 maintained the loyalty rewards on a private server in the Western District of Michigan that was not accessible to legitimate users of the customer loyalty platform of the company's website. These rewards were only accessible to a very limited number of employees of Corporate Victim 1 and were transferred by these employees from the private server to customer loyalty accounts only after a customer reached pre-defined spending levels necessary to earn the rewards.

4. Defendants knew that they were not legitimately entitled to Corporate Victim 1's loyalty rewards unless they spent defined amounts of their own money in Corporate Victim 1's retail stores.

5. It was part of the conspiracy that Defendants created fraudulent customer loyalty accounts using a fictitious name, phone numbers and email addresses. In other words, these loyalty accounts were not tied to any actual person who would shop in Corporate Victim 1's stores and spend their own money to earn customer loyalty rewards. When creating these accounts, Defendants misrepresented to Corporate Victim 1 that the accounts were in fact tied to real customers that would shop, spend and earn the rewards.

6. It was a further part of the conspiracy that another known conspirator developed a program to infiltrate a private server of Corporate Victim 1 in the Western District of

Michigan. Defendant Goff assisted in the implementation and collaborated with the known conspirator to improve the efficiency and utility of the program. The computer program was used to connect to Corporate Victim 1's website that maintained the public-facing customer loyalty platform and to exploit this access to search for, locate and connect with the private server at Corporate Victim 1 that stored the loyalty rewards. The computer program searched and found all loyalty rewards on the private server and sorted them from highest to lowest dollar amounts. The program also automated the process of creating fraudulent loyalty accounts with a fictitious name and other information. After locating the highest dollar rewards on the private server, the program, almost simultaneously with the creation of the new fraudulent loyalty accounts, populated the accounts with loyalty rewards that were not earned through the required spending in Corporate Victim 1's stores.

7.  To carry out the conspiracy's goals, Defendant Michael Goff and other coconspirators used this computer program to send interstate wire transmissions from Illinois to the Western District of Michigan to execute the conspiracy's scheme to defraud. Additionally, the coconspirators caused the transmission of interstate wires from the cash registers located in the stores of Corporate Victim 1 to Corporate Victim 1's headquarters in the Western District of Michigan when using their fraudulent customer loyalty accounts to redeem the stolen rewards at stores located outside of Michigan.

8.  It was a further part of the conspiracy that Defendants shopped at Corporate Victim 1's many stores throughout the Midwest and purchased merchandise solely or primarily with the stolen loyalty rewards and not with their own money. Defendants varied their patterns by shopping at many different stores, used the self-checkout lanes in the stores, and took other evasive actions to avoid detection by Corporate Victim 1 and its store security personnel.

9. During the relevant times, the conspiracy redeemed $72,894.63 in stolen loyalty rewards and created additional fraudulent loyalty accounts that contained $721,915.48 in additional stolen and unredeemed rewards.

**18 U.S.C. § 1349**
**18 U.S.C. § 1343**

## FORFEITURE ALLEGATION

The allegations contained in this Felony Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the offense in violation of 18 U.S.C. §§ 1343 and 1349 set forth in this Felony Information, the Defendants,

**MICHAEL GOFF and
SCOTT PETER COULIER,**

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the violation. The property to be forfeited includes, but is not limited to, the following:

1. MONEY JUDGMENT: A sum of money that represents the proceeds obtained, directly or indirectly, from the offense charged in the Felony Information.

2. SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

5

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)
21 U.S.C. § 853(p)
18 U.S.C. § 1343
18 U.S.C. § 1349

TIMOTHY VERHEY
United States Attorney

Date: October 8, 2025

RONALD M. STELLA
First Assistant United States Attorney