UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - -

UNITED STATES OF AMERICA,

          Plaintiff,          No. 1:25-CR-148

     vs.          Hon. Jane M. Beckering
                  U.S. District Judge

MICHAEL GOFF,

          Defendant.
_____/

## UNITED STATES' SENTENCING MEMORANDUM

### I.     INTRODUCTION

This Court will sentence Defendant, Michael Goff, on April 16, 2026.  The final presentence investigation report ("PSR") calculates a total offense level of 21 and a criminal history category of I, resulting in a range of imprisonment of 37 to 46 months' imprisonment. There is one outstanding objection regarding the application of a 3-level aggravating role adjustment.  It is the position of the United States that Defendant should receive a term of imprisonment within the guideline range after the appropriate reduction of that guideline range for his cooperation.[1]

---

[1]  After the filing of the Final Presentence Report, the parties noticed that the calculated guideline range includes a 2-level adjustment for Defendant's status as a zero-point offender.  (ECF 49, PSR, PageID.252, ¶ 85).  If this Court were to apply the aggravating role adjustment as proposed by the Probation Officer, Defendant would be ineligible for the zero-point offender adjustment.  U.S.S.G. § 4C1.1(a)(10).  As a result, his sentencing guideline range would be 46-57 months' imprisonment (criminal history I, offense level 23).

## II.    RELEVANT BACKGROUND/OFFENSE CONDUCT

The PSR more than adequately explains the offense conduct.  Defendant participated in a conspiracy to commit wire fraud against a West Michigan retailer (Corporate Victim 1). Defendant Goff led the conspiracy, as he discovered how to use a series of numbers on a bar code associated with customer loyalty rewards issued by Corporate Victim 1 to populate other fraudulently created customer loyalty reward accounts with such rewards.  By doing so, Defendant Goff was able to obtain and spend customer loyalty rewards in Corporate Victim 1's stores without earning the rewards through legitimate customer spending in the stores.  In short, the conspirators stole the customer loyalty rewards and, unlike any other member of the public, shopped for free.

Defendant Goff used his co-conspirator, Defendant Coulier, to help him test out the scheme by using the stolen rewards to shop at various retail locations and to communicate with him while they were shopping in separate stores.  (Government Restricted Access Ex. 1, texts 1 to 5).  As time progressed, Defendant Goff solicited Defendant McCord's computer knowledge to automate the process of searching and finding the customer rewards in Corporate Victim 1's private computer server.  (Government Restricted Access Ex. 1, texts 6 to 10).

## III.    LEGAL ARGUMENT AND AUTHORITIES

### A.    The Probation Officer Properly Applied an Aggravating Role Adjustment

The Probation Officer applied a three-level enhancement for Defendant Goff's role as a manager or supervisor of criminal activity involving five or more participants.  U.S.S.G. § 3B1.1(b).  For the enhancement to apply, all that is required is that the criminal activity involve five or more participants, not that defendant supervised or managed five or more participants. *United States v. Bingham*, 81 F.3d 617, 629 (6th Cir. 1996).  To be a manager or supervisor,

2

defendant need only recruit an accomplice or give instructions to others in the commission of the crime. *United States v. Solorio*, 337 F.3d 580, 601 (6th Cir. 2003).

The facts are clear that Defendant Goff began the scheme to defraud when he discovered the ability to use a series of numbers on a bar code to reuse coupons and then customer loyalty rewards. Defendant then directed Defendant Coulier on how to use the stolen rewards and tested them in stores. As the scheme progressed, Defendant Goff solicited McCord's involvement to develop a computer script to search out and find the rewards and automate the populating of the rewards to the fraudulent loyalty accounts. Defendant Goff then populated accounts with stolen rewards for others identified in the scheme and assisted them in obtaining and spending the rewards, and on some occasions, helped them utilize McCord's program. Defendant Goff also created the text chain to facilitate communications between all participants in the fraud. Finally, Defendant Goff was the individual that downloaded and stored another nearly $720,000.00 in stolen rewards that he clearly intended to use and share with the group.

For all these reasons, an aggravating role adjustment under § 3B1.1 is appropriate.

### B.    Defendant's Cooperation Justifies a 4-Level Reduction in his Guideline Sentencing Range

After the United States executed a search warrant at Defendant's home, Defendant obtained counsel and cooperated with authorities. Defendant continued to cooperate throughout this prosecution. Defendant's conduct justifies a 4-level downward departure.

Under U.S.S.G. § 5K1.1, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, a sentence that is below the otherwise applicable guideline range may be appropriate." U.S.S.G. § 5K1.1 (Policy Statement). Upon receiving such a motion from the government, whether and to what extent to downwardly depart from the sentencing guidelines

3

range is within the sound discretion of the Court. *See United States v. Organek,* 65 F.3d 60, 63 (6th Cir. 1995); *United States v. Snelling,* 961 F.2d 93, 97 (6th Cir. 1991). However, any such departure must be reasonable in light of the cooperation provided by the defendant. *Snelling*, 961 F.2d at 97.

Defendant provided several complete and truthful proffers that included a description of his involvement in the conspiracy and useful information regarding Defendant McCord's role as the leader of the conspiracy.  His proffer interview gave the United States a more complete understanding of the scope of the conspiracy and the roles of the various players.  He was also critical in providing a better understanding of how the conspiracy exploited the customer loyalty rewards program of Corporate Victim 1.  His detailed descriptions of how he first discovered that he could obtain and redeem loyalty rewards without legitimate spending in the retail stores assisted the retailer in improving the security of its systems.  Defendant ultimately testified in the grand jury and his cooperation assisted in the eventual guilty plea of Defendant McCord.  For all these reasons, the United States has moved for and fully supports a 4-level reduction in Defendant's sentencing guideline calculation.

### C.      Defendant's Restitution Obligation

In accordance with Defendant's plea agreement, and the plea agreements of his co-conspirators, the United States requests that the Court order Defendant Michael Goff to pay restitution in the total amount of $72,894.63 and Defendant Scott Coulier to pay restitution in the total amount of $20,000.  Defendant Goff should be held jointly and severally liable for restitution to Corporate Victim 1 with: (1) co-defendant Scott Coulier in the amount of $20,000; and (2) Matthew McCord, who was separately charged in this district in *United States v. Matthew*

*McCord*, No. 1:26-CR-21 (hereinafter, the "Related Case"), in the amount of $72,894.63.[2]

Likewise, Defendant Coulier should be held jointly and severally liable  for restitution to Corporate

Victim 1 with (1) co-defendant Michael Goff in the amount of $20,000; and (2) Matthew

McCord, in the amount of $20,000.

Courts often impose joint and several liability for the total restitution amount on

defendants whose combined conduct caused loss to the victim. *See United States v. Church*,

731 F.3d 530, 537 (6th Cir. 2013) (collecting cases). In awarding restitution in a case where

more than one defendant contributed to the victim's loss, "the court may make each defendant

liable for payment of the full amount of restitution or may apportion liability among the

defendants to reflect the level of contribution to the victim's loss and economic circumstances

of each defendant." 18 U.S.C. § 3664(h).  The Court is also empowered to combine the two

approaches and apportion liability to limit the restitution obligation for some participants in a

crime while concurrently holding other participants liable for the full amount of the loss, an

approach sometimes identified as "hybrid restitution." *United States v. Yalincak*, 30 F.4th 115,

126 (2d Cir. 2022).  However, Courts have made clear that such hybrid restitution obligations

are not satisfied until either a defendant has paid as much as she has been ordered to pay, or

the victim has been made whole. *Id.*

Lastly, to avoid any confusion in the execution of the judgment, the Government

requests that the Court include "full payment" language in the judgment to ensure the victim

is paid in full before any defendant is relieved of his individual obligation to pay restitution as

ordered by the Court.  This means that Defendant Goff's restitution judgment should read as

---

[2] Defendant McCord is scheduled to be sentenced in front of Judge Green on June 29, 2026.  In his plea agreement, Mr. McCord also agreed to pay $72,894.63 in restitution to the victim of the offense. (R.5, PageID.5, 1).

follows:  "Restitution of $72,894.63, payable jointly and severally with Defendant McCord and Defendant Coulier; however, Defendant Goff does not receive the benefit of any payments by Defendant Coulier and/or Defendant McCord until such time as the victim is paid in full."[3]

### D.        The Court Should Impose a Fine of $15,000 as Additional Punishment

The Probation Officer has recommended a fine of $15,000.00, as additional punishment for Defendant Goff's criminal conduct.  Pursuant to U.S.S.G. § 5E1.2, a fine of $15,000 is roughly the low-end of the fine range suggested by the table whether Defendant Goff's final offense level is 21 (the current calculation) or 12 (the most advantageous position for Defendant if he prevails on his objection (3-point reduction), qualifies for zero-point offender (2-point reduction) and receives the full 4-level reduction for is cooperation).

The relevant guideline provides that a fine is appropriate to "reflect the seriousness of the offense . . . to promote respect for the law, to provide just punishment and to afford adequate deterrence."  § 5E1.2(d)(1).  The Court can also consider "any evidence presented as to the defendant's ability to pay the fine" and "the expected costs to the government of any term of probation" or "any other pertinent equitable considerations."  § 5E1.2(d)(2), (7) and (8).

On balance, the United States believes a fine of $15,000.00 is appropriate here.  As reflected in the PSR, Defendant Goff has more than sufficient assets to pay a fine.  This fraud could have been much more significant had law enforcement not executed search warrants so

---

[3]  The United States believes that Defendant Goff has already paid restitution in full of $72,894.63, and Defendant Coulier paid $20,000.00 in restitution prior to the sentencing hearing.  The United States urges the Court to enter the restitution judgment in full for all defendants with the "full payment" language suggested to properly memorialize their restitution obligations.  The Court will also need to address the proposed fines against both Defendants Goff and Coulier, which will only be paid after restitution is paid in full to the victim.  The United States, along with defense counsel, will submit appropriate post-judgment motions should the pre-sentencing hearing payments exceed the amount of the total of restitution and fines assessed against defendants.

quickly and obtained Defendant's cooperation to help the Corporate Victim understand how the crime had been committed.  In fact, the United States believes it would have been likely that the financial losses would have been much higher as Defendant Goff had many more fraudulent loyalty accounts populated with stolen rewards and likely would have caused a much higher actual loss had investigators not intervened.  Imposition of a fine, in addition to a term of imprisonment, will greatly assist in deterring the public from participating in similar schemes to defraud the customer loyalty programs of Corporate Victim 1 and other retailers.

## IV.  CONCLUSION

For all these reasons, the United States respectfully requests that this Court impose a prison sentence within the guideline range, a fine of $15,000.00, an order of restitution of $72,894.63, and a special assessment of $100.

Respectfully submitted,

TIMOTHY VERHEY
United States Attorney

Date: April 2, 2026

/s/ Ronald M. Stella
RONALD M. STELLA
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

7